# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| LISA COLINDRES, and ENLIGHTENED EXPRESSIONS, LLC )<br><br>Plaintiffs, )<br><br>v. )<br><br>TANJA D. BATTLE, in her official capacity as Executive Director of the Georgia Board of Dentistry, STEVE HOLCOMB, H. BERT YEARGAN, RICHARD BENNETT, REBECCA BYNUM, RANDY DANIEL, TRACY GAY, THOMAS P. GODFREY, GREGORY G. GOGGANS, LOGAN "BUZZY" NALLEY JR., ANTWAN L. TREADWAY, in their individual and official capacities as Members of the Georgia Board of Dentistry, and SAMUEL S. OLENS, in his official capacity as the Attorney General of Georgia, )<br><br>Defendants. ) | Civil Action No.<br><br>_____ |

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

NOW COME Plaintiffs LISA COLINDRES ("Plaintiff" or "Ms. Colindres") and Enlightened Expressions, LLC ("Enlightened Expressions") and show their claims against Defendants as follows:

**INTRODUCTION**

1.

Plaintiff Colindres, who is the sole proprietor of Plaintiff Enlightened Expressions, is a teeth-whitening entrepreneur who performs teeth-whitening services. The services performed are analogous to the services any consumer can purchase via over-the-counter products. Nonetheless, the Georgia Board of Dentistry (the "Board")-- which consists of 9 licensed dentists and 1 dental hygienist-- has taken the self-serving position that non-dentist teeth-whitening entrepreneurs like Plaintiff are engaged in the unlicensed practice of dentistry if they provide these services to the public. The unlicensed practice of dentistry is a felony offense in Georgia, punishable by imprisonment for two to five years, a fine of up to $1,000, or both. Despite the fact that Georgia law, O.C.G.A. § 43-11-1 *et seq.* (the "Georgia Dental Practice Act" or "Act"), is silent with regard to teeth whitening, the Board has promulgated rules and taken action to stifle competition by preventing non-dentists from competing with dentists in the provision of teeth whitening services. The Board consists of unsupervised active market participants.

2.

The facts in this action are analogous to those presented in *North Carolina*

*State Bd. of Dental Exam'rs v. Federal Trade Commission*, 135 S.Ct. 1101 (2015) and its underlying record, wherein the North Carolina Board of Dental of Examiners was found in violation of the Sherman Act for prohibiting non-dentists from providing teeth-whitening services.  The facts in this situation, however, are even worse-- e.g., while the North Carolina Board of Dental Examiners had a non-dentist consumer member, and at the very least, there existed a reasonable claim that the North Carolina Board's prohibition was based on statutory authority-- no such facts exist in the present action.

3.

Perhaps recognizing its lack of legal justification in light of the recent Supreme Court ruling, the Board's agents have been harassing the Plaintiffs and making threats, while simultaneously failing to take any formal enforcement action.  Accordingly, Plaintiffs bring this action based on the Sherman Act, as well as the Due Process and Equal Protection clause of the Constitution.  Plaintiffs are seeking both declaratory and injunctive relief.

## PARTIES AND JURISDICTION

4.

Plaintiff Colindres is a citizen and resident of Georgia.  Plaintiff Enlightened

Expressions is a Georgia limited liability company.

5.

Defendant Tanja B. Battle is the Executive Director of the Georgia Board of Dentistry, and tasked with enforcing orders of the Board. Defendant Battle is being sued in her official capacity.

6.

Defendants Steve Holcomb, H. Bert Yeargan, Richard Bennett, Rebecca B. Bynum, Randy Daniel, Tracy Gay, Thomas P. Godfrey, Gregory G. Goggans, Logan "Buzzy" Nalley Jr., and Antwan L. Treadway, are members of the Board. They are being sued in both their official and individual capacities.

7.

Defendant Samuel S. Olens, Georgia's Attorney General, is tasked with enforcing the criminal penalties of the Act, and is sued only in his official capacity as a nominal defendant.

BACKGROUND

RELEVANT MARKET

8.

The relevant market in which to evaluate the conduct of the Board is the

provision of teeth whitening services in Georgia. Teeth whitening services are offered by dentists and non-dentists.

9.

Plaintiff provides its serves in Georgia, primarily in the metro-Atlanta area.

10.

Many dentists offer patients both in-office teeth whitening services and take-home teeth whitening kits. The most common in-office procedure consists of covering the gums with a protective material, applying to the teeth a hydrogen peroxide solution in the 20 35 percent range, and then exposing the teeth to a light source. Take home kits include a custom-made whitening tray, and a whitening gel that is generally a 15-20 percent carbamide peroxide solution. The consumer self-applies the gel in essentially the same manner as when using an over-the counter teeth whitening product purchased at, for example, a grocery store.

11.

During the last several years, in much of the United States, there has been an expansion of teeth whitening operations by non-dentists. Entrepreneurs, much like the Plaintiffs, have begun offering teeth whitening services in salons, retail stores, and mall kiosks.

12.

The Plaintiffs in this action, as with most non-dentist providers, operate in the following way. The provider hands a strip or tray containing peroxide to the customer, who applies it to his or her own teeth. The customer's teeth are then exposed to a light-emitting diode ("LED") light source for 15 to 30 minutes. The amount of hydrogen peroxide applied to the teeth at non-dentist outlets generally falls into the 10-15 percent range. This is a greater concentration than over the counter products (usually 10 percent or less), but less than the concentration employed in dentist-applied products (approximately 20-35 percent). The Plaintiffs do not touch the customer's mouth.

13.

Teeth whitening services performed by non-dentists such as Plaintiff are much less expensive than those performed by dentists. Plaintiff, for instance, typically charges $150 per session. By contrast, dentists typically charge anywhere from $300 to $700, and sometimes more.

14.

The teeth-whitening services provided by dentists and non-dentists is composed of products that have reasonable interchangeability.

15.

Except to the extent that competition has been restrained as alleged below, and depending upon their geographic location, the dentist members of the Board and the dentists of Georgia compete with each other, and also compete with non-dentist providers of teeth whitening services, such as Plaintiffs.

16.

Upon information and belief, each Board member continues to operate separate dental practices while serving on the Board, and each Board member has a personal financial interest in excluding non-dentist teeth whitening services.

17.

Upon information and belief, each dentist Board member offers teeth-whitening services as part of said member's practice.

18.

The Dental Board has and exercises the power to exclude persons, such as Plaintiffs, from competing in the relevant market.

SUPPRESSING COMPETITION

19.

On or about about the early 2000s, non-dentists started offering teeth-

whitening services, often at a significantly lower price than dentists. Shortly thereafter, dentists began complaining to the Board about the non-dentists' provision of these services.

20.

After receiving complaints from dentists, the Board took an active role and began opening investigations into teeth-whitening services performed by non-dentists

21.

During meetings, the Board discussed the increasing number of complaints regarding non-dentist teeth whitening services and indicated to practicing dentists that the Board was attempting to shut down these non-dentist providers.

22.

The Board demonstrated a unity of purpose, as well as common design and understanding, to eliminate non-dentist teeth whitening.

23.

Additionally, the Board possessed and possess a conscious commitment to a common scheme designed to achieve an unlawful objective.

24.

The Board's intrafirm agreements act simply as a formalistic shell for ongoing concerted action.

25.

On several occasions, the Board discussed teeth whitening services provided by non-dentists and then voted to take action to restrict these services.

26.

The Board has subsequently issued numerous letters on official letterhead and requested that the non-dentists providing teeth-whitening services cease and desist all activity constituting the practice of dentistry. The letters refer to or threaten fines and potential criminal sanctions.

27.

Additionally, the Board is engaged in a consistent practice of discouraging non-dentist teeth whitening services through their cease-and-desist letters and other efforts. These actions and communications are similar and have the common objective of closing the teeth-whitening market to non-dentists.

28.

The Board also uses its investigators and agents to verbally threaten non-dentists from providing teeth-whitening services.

29.

The Board's lengthy consistent campaign of sending letters and making threats to non-dentists is suggestive of and indicates coordinated action.

30.

The Georgia Dental Practice Act does not expressly address teeth whitening, and the Act further appears to indicate that teeth whitening does not constitute the practice of dentistry.

31.

Nonetheless, the Board has decided that the provision of teeth whitening services by non-dentists constitutes the unlicensed practice of dentistry.

32.

Inconsistently, the Board interprets the Dental Act as permitting non-dentists to engage in the retail sale of teeth whitening products for use at home. However, the Board has taken a position that any service provided along with a teeth whitening product, including advice, guidance, providing a customer with a personal tray, whitening solution, mouth piece and/or LED light, or providing a location to use the whitening product, constitutes the practice of dentistry.

33.

Under the Act, any person who engages in any activity considered to be the practice of dentistry "without obtaining a license to practice from the board shall be guilty of a felony" and subject to fines and imprisonment. O.C.G.A. § 43-11-50. The unlawful practice of dentistry is punishable by imprisonment of two to five years, a fine of not less than $500, or both. *Id.*

34.

To become a licensed dentist in Georgia, one must have received a doctoral degree in dentistry, as well as successfully passed an examination approved by the Georgia Board of Dentistry. Ga. Comp. R. & Regs. 150-03-.04.

35.

A doctoral degree in dentistry is typically a four-year course of study in addition to a four-year undergraduate degree.

36.

The cost of dental school tuition in Georgia for a four-year doctoral degree ranges between $85,000 and $240,000, depending on the school chosen and the state of residency of the student.

37.

The Board consists of 11 members appointed by the Governor.    Nine

members of the Board are required to be dentists; one must be a dental hygienist; and one member must be a non-dentist. O.C.G.A. § 43-11-2. At present, 9 members on the Board are dentists and 1 member is a dental hygienist. There is a vacancy and the Board is missing a non-dentist.

38.

The Board has acted in various ways to eliminate the provision of teeth whitening services by non-dentists such as Plaintiffs.

39.

In the past, the Board has engaged in several types of activities aimed at preventing non-dentists from providing teeth whitening services in Georgia, including but not limited to sending cease and desists letters, intimidation of agents and inspectors, and coercing non-dentists from providing teeth whitening services through "voluntary" agreements.

40.

These actions against non-dentists have had the actual effect of stopping non-dentists from providing teeth-whitening services in Georgia.

41.

The Board interprets the Dental Practice Act and its Rules to include teeth-

whitening businesses like Plaintiffs' as the unlawful practice of dentistry. *See* **Exhibit A** (Georgia Board of Dentistry Letter to Atlanta Better Business Bureau) ("altering the shade of teeth, such as is done by current whitening techniques <u>is the practice of dentistry</u>. Therefore, unless the facility has a Georgia licensed, direct supervision dentist present for the treatment, it is a violation of the Dental Practice Act and the laws of the State of Georgia. Such facilities that do not have a dentist performing and supervising the services would be charged with the unlicensed practice of dentistry, which is a felony in this state.") (emphasis in original).

42.

Acting under a color of state authority, the Board has sufficient market power to affect competition, and deter and coerce non-dentists from providing teeth-whitening services.

43.

The Board's actions have an actual detrimental effect on competition.

44.

With regard to Plaintiffs, the Board, through its agents, is threatening the Plaintiffs with prospective penalties and is engaging in harassing behavior, but has thus far refused to initiate a formal enforcement action against Plaintiffs.

45.

Upon information and belief, the Board is aware of the Supreme Court's holding in *North Carolina State Bd. of Dental Exam'rs v. Federal Trade Commission*, and simply wishes to circumvent the implications of the Supreme Court's ruling.

46.

The Board's actions constitute extra-judicial activities aimed at preventing non-dentists, such as Plaintiffs, from providing teeth whitening services in Georgia. These activities are not authorized by statute and circumvent any review or oversight by the State.

47.

The Board's exclusion of the provision of teeth whitening services by non-dentists does not qualify for a state action defense nor is it reasonably related to any efficiencies or other benefits sufficient to justify its harmful effect on competition.

48.

The Board maintains a monopoly in Georgia, and through its actions in preventing non-dentists from providing teeth whitening services, causes injury to

consumers and entrepreneurs like Plaintiffs alike.

49.

The Board's conduct as described herein also constitutes monopolization and/or attempted monopolization of the market for teeth-whitening in Georgia.

50.

Plaintiffs' business is currently suffering as a result of the Board's agents making threats, sometimes in the presence of consumers, but refusing to take any formal action.

51.

Plaintiffs remain in a status of legal limbo, where the Board is acting under color of authority, and stifling competition to the detriment of Plaintiffs and consumers alike.

52.

The Board's anticompetitive conduct described above, together with the predatory intent to deprive non-dentists of a fair competitive opportunity for effective competition, violates antitrust principles long established by the United States Supreme Court.

53.

The actions of the Board detailed herein may be expected to continue in the absence of effective relief. As a consequence of the challenged actions and course of conduct of the Board, the availability of non-dentist teeth whitening services in Georgia has been and will continue to be significantly diminished.

54.

Plaintiffs wish to continue their business, but faced with the prospect and uncertainty of numerous fines and potential criminal violation, their ability to continue providing teeth-whitening services is called into question.

55.

The Board frequently threatens individuals such as Plaintiffs with criminal penalties and high civil fines in order to coerce the entrepreneurs and non-dentist teeth-whiteners from providing services.  In lieu of litigating the matter (at least prior to the Supreme Court decision in *North Carolina State Bd. of Dental Exam'rs v. Federal Trade Commission*), the Board would allow the non-dentist teeth-whiteners to enter into a "voluntary" cease and desist order, wherein the individuals would "voluntarily" cease and desist providing services, and further waive any rights they have to a hearing in the matter.

56.

Numerous other businesses have closed down entirely or have ceased to sell teeth whitening products and/or services.

57.

With regard to the Plaintiffs, the Board's agent has previously encouraged Plaintiffs to voluntarily cease operations, but has refused to provide any writings to such effect.

58.

The Board's agent further advised Plaintiff Colindres _not_ to seek legal representation.

59.

The challenged actions and course of conduct of the Board have had and will have the effect of restraining competition unreasonably and injuring consumers including, _inter alia_, preventing and deterring non-dentists from providing teeth whitening services in Georgia; depriving consumers of the benefits of price competition; and reducing consumer choice in Georgia for the provision of teeth whitening services.

60.

All conditions precedent to Plaintiffs' entitlement to recover the requested

relief have occurred or otherwise have been performed, waived, satisfied or excused by Defendants' conduct.

## COUNT I: Violation of the Sherman Act

### 61.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

### 62.

This Count is brought pursuant to Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 *et seq.*

### 63.

The Board cannot invoke state-action antitrust immunity because it is not and has not been subject to active supervision by the State.

### 64.

The Dental Practice Act does not mandate or authorize the Board's conduct that constitutes a violation of the antitrust law as described herein.

### 65.

The Board has agreed upon a policy of prohibiting non-dentists from providing teeth whitening. *See, e.g.,* Ex. A.

66.

The Board engaged in and continues to engage in concerted action.

67.

The Board's actions unreasonably restrain competition from non-dentists, including but not limited to Plaintiffs.

68.

The Board's actions affect interstate commerce and impair consumer choice, and have an actual detrimental effect on competition.

69.

The Board's restraint is both *per se* unreasonable (*e.g.*, under *North Carolina State Bd. of Dental Exam'rs v. Federal Trade Commission,* where in the Dental Board of North Carolina's actions were found to be a violation of 5 U.S.C. § 1; North Carolina State Bd. of Dental Exam'rs v. Federal Trade Commission, 135 S.Ct. 1101 (2015); *North Carolina State Bd. of Dental Examiners v. F.T.C.*, 717 F.3d 359 (4th Cir. 2013)), and violates the rule of reason.

70.

The Board's actions are conducted with with the predatory intent to deprive non-dentists of the opportunity to effectively compete in the teeth-whitening

industry against dentists.

71.

Consumers and non-dentist teeth-whiteners have been injured.

72.

As a direct, proximate, and foreseeable result of the Defendants' conduct, the Plaintiffs have suffered damages and injury.

73.

Accordingly, this Court may and should grant declaratory and injunctive relief, damages, and attorneys' fees and costs.

74.

Plaintiff explicitly requests treble damages, as provided in 15 U.S.C. § 15.

## **COUNT II: Prior Restraint of Speech**

75.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

76.

This Count is brought pursuant to the First and Fourteenth Amendments, and 42 U.S.C. § 1983.

77.

Plaintiffs' ability to earn an honest living, provide teeth-whitening services and to advertise such services, is protected under the United States Constitution and aforementioned statutes.

78.

The Board recognizes that it cannot lawfully prevent entrepreneurs like Plaintiff from providing teeth-whitening services, especially in light of the record in *North Carolina State Bd. of Dental Exam'rs v. Federal Trade Commission*, as such law is not authorized by Georgia statute and would be overbroad.

79.

The Board's actions constitute an extralegal and unconstitutional prior restraint of speech. As established by *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963), government officials and those acting under the color of authority cannot censor or chill speech through informal threats of sanctions, harassment, and intimidation.

80.

Prior restraints of speech are "the essence of censorship," *Near v. Minnesota*, 283 U.S. 697, 713 (1931), "the most serious and the least tolerable

infringement on First Amendment rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976), and "bear[] a heavy presumption against ... constitutional validity." *Bantam Books*, 372 U.S. at 70.

81.

The Board's actions do not fit within any of the narrowly defined exceptions to the prohibition against prior restraints.

82.

The Board cannot establish that its actions in threatening individuals like Plaintiffs with potential criminal prosecution and fines are the least restrictive means to accomplish a compelling state interest.

83.

As a direct result of Defendants' actions, Plaintiffs have suffered and absent relief from this Court will continue to suffer damages for lost revenue, harm to their business and goodwill, and infringement and deprivation of their rights under the Constitution and federal law.

84.

Also as a direct result of Defendants' actions, if not remedied, consumers suffered and will continue to suffer, be deprived of the benefit of competition, and

be deprived of their constitutional rights.

85.

At all times and for all actions as alleged in this Complaint, the Board has acted under color of state law. Its actions have resulted in deprivation of rights and privileges secured by the Constitution and federal laws.

86.

Plaintiffs have suffered damages and injury as a result of Defendants' actions.

87.

Accordingly, this Court may and should grant declaratory and injunctive relief, damages and attorneys' fees and costs.

88.

**COUNT III: Violation of the Equal Protection Clause**

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

89.

This Count is brought pursuant to the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

90.

The Georgia Dental Practice Act provides that only licensed dentists are authorized to provide services that constitute the practice of dentistry. O.C.G.A. § 43-11-50.

91.

The Dental Board interprets the "practice of dentistry" to include teeth-whitening services like those provided by Plaintiffs. *See* Exhibit A.

92.

Plaintiff is not a licensed dentist and is not eligible to become a licensed dentist without nearly a decade of training and education. Therefore, according to the Board, she cannot offer teeth-whitening services.

93.

Products identical to those used and provided by Plaintiffs are available for purchase in supermarkets, drug stores, and online. Instructions for use of those products are widely available, either provided with the products themselves or online.

94.

Teeth-whitening products identical to those used by Plaintiffs are available

for purchase and home use without a prescription.

95.

The Equal Protection Clause of the Fourteenth Amendment does not allow government to treat similarly situated persons differently unless the reason for doing so bears a rational relationship to a legitimate governmental interest.

96.

Plaintiff has been denied equal protection of the law because there is no rational reason for the Board's distinction between a person selling customers a product to apply to their own teeth at home, who are not regulated under the Dental Practice Act, and a person selling customers an identical product to apply to their own teeth in a shopping mall or at a salon, whom the Board considers to be engaged in the practice of dentistry.

97.

Plaintiff has also been denied equal protection of the law because there is no rational reason for the distinction between her provision of in-person instruction to customers on how to apply teeth-whitening products to their own teeth, which the Board considers to be the practice of dentistry, and the provision of written online instructions or packaged with identical teeth-whitening products, which is not

regulated under the Dental Practice Act.

98.

Plaintiffs have also been denied equal protection of the law because there is no rational reason for the distinction between the Board's prohibition on Plaintiffs providing teeth-whitening services by providing products in-person, which the Board construes as the practice of dentistry, while the Board ignores and does not regulate the provision of teeth-whitening services via consumer products sold online and in stores.

99.

Unless Defendants are enjoined from committing the above-described violations of the Fourteenth Amendment, Plaintiff will continue to suffer great and irreparable harm.

100.

Plaintiffs have suffered damages and injury as a result of Defendants' actions.

101.

Accordingly, this Court may and should grant declaratory and injunctive relief, damages, and attorneys' fees and costs.

## <u>COUNT IV: Violation of Due Process</u>

102.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs above as if fully set forth herein.

103.

This Count is brought pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

104.

The Due Process Clause protects the right to earn an honest living in the occupation of one's choice, subject only to regulations that are rationally related to a legitimate governmental interest.

105.

There is no legitimate governmental interest for the application of the Dental Practice Act to teeth-whitening services like those offered by Plaintiff.

106.

The application of the Dental Practice Act to teeth-whitening services like those offered by Plaintiffs is not rationally related to any legitimate governmental interest that Defendants purport to have.

107.

The Board's actions, as applied to Plaintiffs, deprives Plaintiffs of their right to earn an honest living in the occupation of her choice by imposing restrictions on teeth-whitening services that are not rationally related to any legitimate governmental interest.

108.

Unless Defendants are enjoined from committing the above-described violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

109.

Plaintiffs have suffered damages and injury as a result of Defendants' actions.

110.

Accordingly, this Court may and should grant declaratory and injunctive relief, damages and attorneys' fees and costs.

**COUNT V: Violation of Due Process for Over-breadth and Vagueness**

111.

Plaintiffs restate, reaffirm, and incorporate by reference the paragraphs

above as if fully set forth herein.

### 112.

This Count is brought pursuant to the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

### 113.

Upon information and belief, in its attempt to curtail teeth-whitening provided by non-dentists, the Board relies upon the provision of the Dental Practices Act that provides the practice of dentistry includes any person that "[s]upplies, makes, fits, repairs, adjusts, or relines, directly for or to an ultimate user of the product in the State of Georgia, any appliance, cap, covering, prosthesis, or cosmetic covering, as defined by rules and regulations established by the board, usable on or as human teeth unless such provision, production, fit, repair, adjustment, or reline of such product is ordered by and returned to a licensed dentist or unless such product is used solely for theatrical purposes as defined by rules and regulations established by the board." O.C.G.A. § 43-11-17 (a)(6).

### 114.

To the extent O.C.G.A. § 43-11-17 (a)(6) provides a legitimate basis for the

Board's actions, said statute is Unconstitutional-- both based on the doctrines of over-breadth and vagueness.

115.

The Dental Practices Act, and in particular O.C.G.A. § 43-11-17 (a)(6), inhibits the exercise of constitutionally protected rights, and the impermissible applications of the law are substantial when compared to the statute's legitimate sweep.

116.

Additionally, even if the Dental Practices Act and in particular O.C.G.A. § 43-11-17 (a)(6)'s enactment does not pertain to a substantial amount of constitutionally protected conduct, it is impermissibly vague because it fails to establish standards for the police and public that are sufficient to guard against the arbitrary deprivation of liberty interests.

117.

O.C.G.A. § 43-11-17 (a)(6) and the Dental Practice Act fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; and second, authorize and even encourage arbitrary and discriminatory enforcement.

118.

As elucidated above, the Board does not take the position that teeth-whitening products, such as Crest white strips, or other products identical to those used by Plaintiff, are prohibited from sale to consumers.

119.

The Board has, however, arbitrarily and discriminatingly, decided to suppress the practices of non-dentist teeth whiteners such as Plaintiffs.

120.

Unless Defendants are enjoined from committing the above-described violations of the Constitution, Plaintiffs will continue to suffer great and irreparable harm.

121.

Plaintiffs have suffered damages and injury as a result of Defendants' actions.

122.

Accordingly, this Court may and should grant declaratory and injunctive relief, damages, and attorneys' fees and costs.

## CONCLUSION

Wherefore, for the reasons set forth above, Plaintiffs respectfully request that the Court:

(1)    Declare that the Board's actions, as they pertain to teeth-whitening services provided by the Plaintiffs and those similar to Plaintiffs, is Unconstitutional;

(2)    Enjoin the Defendants from preventing Plaintiffs and those similar to Plaintiffs from providing teeth-whitening services;

(3)    Award damages to Plaintiffs, including, *inter alia*, treble damages;

(4)    Assess against Defendants an award of attorney's fees as allowable by law in an amount the Court determines to be reasonable;

(5)    Assess all costs and expenses of the suit against the Defendants; and,

(6)    Grant Plaintiffs any and all further relief as this Court deems just and proper.

Respectfully submitted this _____ day of August, 2015.

/s/ Yasha Heidari_____

Yasha Heidari
Georgia Bar No. 110325
Yenniffer Delgado
Georgia Bar No. 623452
Attorney for Plaintiffs

HEIDARI POWER LAW GROUP LLC
P.O. Box 79217
Atlanta, Georgia 30357
tel:    404-939-2742
fax:    404-601-7852
e-mail: yasha@hplawgroup.com